**IN THE SUPERIOR COURT**
**OF GUAM**

THE PEOPLE OF GUAM,                    )        CRIMINAL CASE No. CF 0429-12
                                       )
                                       )
            v.                         )
                                       )        **DECISION AND ORDER**
                                       )        On People's Motion for Appointment
DAVID Q. UNCANGCO,                     )        of Defense Expert and Protective Order
                                       )
            Defendant.                 )
                                       )
_____)

## INTRODUCTION

This matter came before the Honorable Judge Michael J. Bordallo on October 3, 2012 on the Defendant's "Motion for Appointment of Defense Expert; Protective Order." The People of Guam were represented by Assistant Attorney General David Rivera. The Defendant was represented by Assistant Public Defender Maria Fitzpatrick. Having reviewed the memorandum and papers presented, the court now issues the following decision DENYING the Appointment of Defense Expert, GRANTING the Motion for Independent Psychiatric Evaluation, and DENYING the Motion for Protective Order.

## FACTUAL HISTORY

The Defendant was indicted on July 16, 2012 on two counts each of *Second Degree Robbery* and *Possession and Use of a Deadly Weapon in the Commission of a Felony*. The charges arise from two separate robberies, both of which the Defendant confessed to upon arrest. The Defendant was arraigned on August 1, 2012 and filed the current motions on September 13, 2012. The first motion, requesting appointment of a defense expert, is improperly titled. The motion is made pursuant to 9 GCA §7.22(b), which permits a defendant to plead the affirmative defense of not guilty by reason of mental illness, disease, or defect. Similarly, the first motion

relies exclusively on case law establishing the right to an independent psychiatric evaluation. For these reasons, the Court denies the motion for defense expert and treats the motion as Defendant's request to place his mental health at issue before the court.

The second motion requests a protective order for the results of any court-ordered psychiatric evaluation. A protective order is necessary, the Defendant argues, because requiring full disclosure of the evaluation to the prosecution "undermines" his ability to prepare an adequate defense. The People disagree and timely filed an opposition. The People's motion does not oppose appointment of an independent psychiatrist, but does object to having the results of the court-ordered evaluation placed under protective order. For the following reasons, the Court agrees with the People.

## DISCUSSION

The Defendant has motioned to place his mental health at issue before the court and, if granted, to receive a protective order for the results of his psychiatric evaluation. The first motion is argued "on the grounds that counsel cannot determine whether to put [Defendant's] mental state at issue." The second motion, to have the results of the psychiatric evaluation placed under a protective order, is purportedly necessary because competent psychiatric assistance is "undermined if full disclosure is required to be made to the prosecution." The People do not oppose the appointment of an independent psychiatrist, but timely filed an opposition to the Defendant's motion to place evaluation results under protective order. The Court addresses each of motion in turn.

### I.    *The Motion to Appoint an Independent Psychiatrist*

Guam law protects the right of defendants to plead the affirmative defense of mental illness, disease or defect to pending criminal charges. 7 GCA §7.22. A defendant should plead

the defense within ten days of arraignment, unless good cause for delay is demonstrated. *Id.* In the case presently before the Court, the Defendant has moved to enter a plea of not guilty by reason of mental disease or defect, but has done so more than a month after his arraignment. The Defendant offers no explanation for why his motion was not timely filed.

The Court has the discretion to allow a Defendant to enter a late plea of not guilty by reason of mental disease or defect. The law states that the defendant shall plead "not later than ten days after his arraignment *or at such later time as the court for good cause may allow.*" 7 GCA §7.22(d) (emphasis added). Good cause generally requires the defendant "to produce evidence which would show the trial judge that there were reasonable grounds to believe that at the time of the commission of the crime he was legally insane." *People v. Hererra*, 163 Cal.Rptr 435, 439 (1980) (citing *People v. Morgan*, 50 P2d. 1051, 1062). Because the Defendant has neither addressed the tardiness of his motion, nor offered any evidence of good cause for his delay, the Court could reasonably decide to deny the motion.

Ensuring the Defendant's due process rights outweighs denying him the opportunity to enter his affirmative defense. This discretionary decision is supported by the fact that the People do not object to the Defendant placing his mental health at issue before the court despite his having missed the statutory deadline. Furthermore, the Court will presume that the Defendant mistakenly titled his motion as a request to appoint defense expert and did not intentionally seek to avoid demonstrating good cause for his delay. For these reasons the Court exercises its discretion to grant the Defendant an independent psychiatric evaluation.

## II. *The Motion for Protective Order*

The Defendant has motioned for a protective order to prevent any statements made during a court-ordered psychiatric evaluation from being disclosed to the People. Defendant is

concerned that "a neutral court psychiatrist does not satisfy due process if [the] psychiatrist is required to disclose his evaluation to the court sitting as fact finder." The Defendant further insists that a protective order is necessary to ensure that the statements are admitted solely "on the issue regarding mental condition on which defendant has introduced evidence of incompetency." To do otherwise, the Defendant suggests, would violate his Fifth Amendment right against self-incrimination. In support of these arguments, the Defendant relies on two Ninth Circuit cases, *Smith v. McCormick* and *Pawlyk v. Wood*, as well as the U.S. Supreme Court case of *Ake v. Oklahoma*. The Court will rely on these same cases, as well as Guam statutory law, to demonstrate why the Defendant's claims are unfounded.

### A. Guam Law Requires Disclosure

Guam statute 7 GCA §7.22 delineates the procedure for pleading the affirmative defense of not guilty by reason of mental disease or defect. This statute protects the due process rights of the defendant, as well as the right of the People to prepare an adequate rebuttal to the defense. *See* 7 GCA §7.22 comment. Accordingly, no evidence of mental disease or defect may be presented by the Defendant until he has properly admitted his plea. §7.22(b). This plea shall be made in open court or in writing no later than ten days after arraignment. §7.22(c). Once the plea is entered the court is mandated to order a psychiatric evaluation as provided in Section 7.25. §7.22(d). After the evaluation is complete and a report has been produced, "Copies of any records, reports, or documents or any information furnished by either party to the psychiatrist appointed in this Section *shall be given to the other party in the action.*" §7.25(f)(emphasis added).

Guam law mandates the disclosure of reports generated from court-ordered psychiatric evaluations. The statutory law is not only unequivocal, is decidedly detailed in the exact

procedure that must be undertaken. The law requires that "Each psychiatrist appointed by the court who examines the defendant pursuant to this Section *shall file a written report with the clerk of court who shall deliver copies to each party.*" §7.25(g) (emphasis added). The law also delineates the information the psychiatrist places within the report and that information to which the psychiatrist may testify to at trial. §7.25(g)(1)-(8); (h). The law governing the appointed psychiatrist's report and testimony prevents the introduction of evidence not specific to the issue of mental competency and addresses the Defendant's concern that his statements be admitted solely on the issue of his affirmative defense.

## B. The Court Will Appoint a Psychiatrist and Will Not Sit as a Fact Finder

The Defendant correctly points out that an indigent defendant's right to psychiatric counsel is not satisfied when the psychiatrist is required to disclose his evaluation to the court *sitting as a fact finder. Smith v. McCormick*, 914 F.2d 1153, 1158 (1990): *Pawlyk v. Wood*, 248 F.3d 815, 824 (2001). The *Pawlyk* court, referencing their earlier decision in *Smith*, clarifies that the right to counsel is not satisfied when:

> "the trial court rather than the defendant determined the scope of the psychiatrist's duties. In so doing, the trial court denied the defendant access to the psychiatrist to perform the core functions for which a psychiatrist must be made available to the defendant. First, as the trial court determined the scope of the psychiatrist's evaluation, the defendant was precluded from obtaining the assistance of the psychiatrist in evaluating other mental status issues. Second, the defendant and his counsel were denied any opportunity to discuss the viability of particular defenses with the appointed psychiatrist in light of his evaluation. Indeed, the disclosure of the neutral psychiatrist's report to the court precluded the defense from deciding whether particular claims, along with the underlying evidence, should be presented to the fact-finder. Third, the duties of the neutral psychiatrist, as defined by the trial court, did not include assistance to the defendant in preparing a defense. Fourth, the defendant was deprived of the aid of the appointed psychiatrist in rebutting the state's evidence. The defendant did not have the benefit of a psychiatrist to assist in interpreting the neutral psychiatrist's evaluation, or preparing an examination of the neutral psychiatrist, or providing testimony if appropriate."

248 F.3d 815, 825 (2001). The determinative facts in *Smith* are not, however, analogous to the Defendant's case. In appointing an independent psychiatrist, the Court will neither sit as a fact-finder, nor determine the scope of the psychiatrist's duties.

The *Pawlyk* case, like Guam statutory law, very precisely delineates the constitutional rights afforded an indigent defendant who places his mental health at issue before the court. Due process guarantees the defendant access to a single, competent psychiatrist. *Id.* at 823. The seminal U.S. Supreme Court case of *Ake v. Oklahoma* made clear that this does *not* give the defendant "a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." 470 U.S. 68, 83 (1985). Additionally, "*Ake* does not guarantee access to a psychiatrist 'who will reach only biased or favorable conclusions.'" *Pawlyk* at 823 (quoting *Harris v. Vasquez*, 949 F.2d 1497, 1516–17 (9th Cir.1990)). The Ninth Circuit summarizes: "That due process guarantees a defendant access to a single, competent psychiatrist, but does not guarantee a favorable evaluation, leads inexorably to the conclusion that a psychiatrist's evaluation or opinion may have an adverse, but constitutionally permissible, effect on particular mental status defenses that a defendant might wish to present." *Id.* Therefore, defendants must, "consider whether the testimony will be harmful or helpful in light of the psychiatrist's evaluation." *Id.*

Defendants who place their mental health at issue before the court, do so knowing that the results of a court-order psychiatric exam will be made available to the People. Both before the psychiatric evaluation and after receiving the evaluation results, the Defendant must decide if he wishes to assert the affirmative defense. Furthermore, because the defendant seeks to prove that he is not criminally liable by reason of mental disease or defect, the defendant cannot withhold evaluation evidence relevant to the very issue he has placed before the court. *See Id.* at

825. In *Pawlyk*, the defendant was able to obtain two independent psychiatric evaluations – the first of which was unfavorable to his defense. When the defendant called the second psychiatrist to testify on his behalf, the prosecution sought to have the first psychiatric evaluation admitted into evidence for the purpose of rebuttal. The Ninth Circuit upheld the Washington Supreme Court's finding that the first report was discoverable, admissible evidence. The first evaluation was discoverable because "the compelled disclosure of Dr. Harris' evaluation was not tantamount to appointing a psychiatrist upon a condition of full disclosure, but was the consequence of [the defendant's] decision to assert an insanity defense." *Id*. at 826.

**C. The Defendant's Fifth Amendment Rights are not Implicated**

Where a psychiatrist's evaluation is limited to the issue of a defendant's competency to stand trial and the ability to aid in his own defense, the Fifth Amendment is not implicated. *Estelle v. Smith*, 451 U.S. 454, 465 (1981). The Defendant argues that he needs a protective order for his psychiatric evaluation to ensure "Any statement by defendant made to the expert, any fruits of the statement as well as any statement made by the expert based upon the statement may not be used against the defendant in any criminal proceeding *except on the issue regarding mental condition on which the defendant has introduced evidence of incompetency*," (emphasis added). The Defendant's concern is addressed by statutory and case law requiring that the report be admitted for the limited purpose of establishing a defendant's ability to stand trial and his mental competency during the acts charged. *See Estelle* (holding that psychiatric evaluation results could not be used to establish 'future dangerousness' for sentencing purposes following conviction).

The Defendant's due process rights are not currently implicated. Defendant correctly notes that allowing the prosecution to "enlist the psychiatrists' efforts to help secure a conviction

would deprive an indigent defendant of due process." While this statement is true, it does not apply to this case. There is a critical distinction between using the information contained within the psychiatric evaluation for rebuttal purposes – which is permitted by law – and using the same information to establish a conviction. The People have made no motion indicating that they seek to use the results of the as yet incomplete, future report to establish the Defendant's guilt. Instead, the People support the motion to appoint an independent psychiatrist and seek only to enforce their statutory right to have access to the results of the court-ordered evaluation.

None of the case law offered by the Defendant supports denying the People access to the results of a court appointed psychiatric evaluation. The People's right to have access to the report is mandated by Guam law and supported by case law from both the U.S. Supreme Court and the Ninth Circuit. The Supreme Court has made clear that, "Where, however, a defendant places his mental status at issue and thus relies upon reports of psychological examinations, he should expect that the results of such reports may be used by the prosecutor in rebuttal." *Buchanan v. Kentucky*, 483 U.S. 402, 425 (9187). In *Buchanan*, the defendant challenged the introduction of results from a court-appointed psychiatric evaluation on grounds that he had not been informed that his statements could be used against him at trial. The Supreme Court affirmed the admissibility of the reports and found no Fifth Amendment violation because "the psychiatrist had set forth his general observations about the mental state of petitioner but had not described *any* statements by petitioner dealing with the crimes for which he was charged." *Id*. at 424.

When a defendant requests a psychiatric evaluation, the People can rebut "with evidence from the reports of the examination that the defendant requested," because the defendant has "no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution." *Id*. at 423. Additionally, a "defendant who asserts a mental status defense lacks a

Fifth Amendment right to remain silent regarding the mental status that he has placed at issue," because "a defendant's communication to a psychiatrist regarding his mental status is often the only meaningful evidence available to either the prosecution or the defendant regarding the defendant's mental state." *Pawlyk* at 825 (citing *Buchanan* at 422-423; *Estelle* at 465). The Supreme Court and Ninth Circuit cases consistently find that reports from a court-appointed psychiatrist are discoverable material available to the People when an indigent defendant elects to place his mental health at issue before the court. This case law, coupled with the mandate of Guam law requiring that the report be delivered to "the other party in the action," prevents the Court from granting a protective order. 9 GCA §7.25(g).

### CONCLUSION

Because the Defendant did not properly motion for a defense expert pursuant to Guam law, the Court DENIES the Motion for Appointment of Defense Expert. The Defendant's motion is read as a motion to place mental state at issue before the court and the Court accordingly GRANTS the Defendant's Motion for Independent Psychiatric Evaluation. Because the Defendant has failed to demonstrate that production of the psychiatric report is not mandated by both statute and case law, the Court DENIES the Motion for Protective Order. Further Proceedings are set for __2/12/13__ 2013 at 9am.

SO ORDERED, this 25th day of January 2013.

JAN 28 2013

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

Page 9 of 9